UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD HINDES,<br><br>  Plaintiff,<br><br>v.<br><br>LESLEE DUNCAN, ROBERT KING and UNITED STATES OF AMERICA,<br><br>  Defendants. | Case No. 14-cv-1272-JPG-DGW<br><br>consolidated with |
| RICHARD HINDES,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant. | Case No. 15-cv-1373-JPG-DGW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 108) of Magistrate Judge Donald G. Wilkerson recommending that the Court grant the motion for summary judgment filed by defendants Leslee Duncan and Robert King (Doc. 101). Plaintiff Richard Hindes has objected to the Report (Doc. 109), and the defendants have responded to the objections (Doc. 111).

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir.

1999).

**I.    The Report**

Plaintiff Richard Hindes was an inmate at the United States Penitentiary at Marion, Illinois ("USP-Marion"), from July 11, 2013, to November 27, 2013.   He suffered from hypogonadism, which required treatment with testosterone injections.   In this lawsuit, he claims Duncan, a physician's assistant at USP-Marion, and King, a physician at USP-Marion, were deliberately indifferent to his serious medical needs by failing to provide testosterone injections of the appropriate dosage and with the appropriate frequency.

In the Report, Magistrate Judge Wilkerson outlined the treatment Hindes received from each defendant.

   A.    Duncan

Upon his arrival at USP-Marion in July 2013, Duncan ordered that Hindes's ongoing injection regimen – a 200 mg shot every two weeks – continue and that his blood testosterone level be tested.   The July 23, 2013, test result was higher than the reference range specified by the laboratory performing the test, so on August 28, 2013, Duncan discussed the matter with a doctor and decided to lessen the frequency of Hindes's injections to every three weeks to avoid risks associated with high testosterone levels.   The doctor approved the change.   Duncan requested three follow-up blood testosterone tests to monitor Hindes's testosterone levels.

The first follow-up blood test was on September 11, 2013, sixteen days after an injection on August 26, 2013.   The test showed a testosterone level within the normal range, albeit at the low end of the reference range specified by the laboratory performing the test.   After conferring with the doctor, on September 19, 2013, Duncan ordered the new regimen to continue, with a

follow-up blood test on March 19, 2014, and every six months thereafter. He was given an injection about every three weeks during September, October and November 2013. The second and third blood tests Duncan originally requested were not done, and Hindes was not at USP-Marion at the time the six-month follow-up test was to occur.

Hindes disagreed with Duncan's change to his regimen and complained to her about symptoms he attributed to the less frequent injection regimen, including pain, lethargy/fatigue and night sweats. He believes he needed to be in the upper part of the normal testosterone range. In light of his normal blood test, Duncan refused to change the regimen back to more frequent injections or to refer Hindes to a specialist.

B. King

King saw Hindes on October 31, 2013, about two months after he had been placed on the less frequent injection regimen. When Hindes complained of symptoms he attributed to low testosterone, King informed him that his testosterone blood test was normal and that elevated testosterone posed a risk of testicular cancer. Hindes told King he had no testicles but refused to submit to an exam by King to verify that fact because he was in the special housing unit in front of other inmates at the time. King mocked him. King gave Hindes an injection that day and ordered three additional testosterone blood tests to be done at seven, fourteen and twenty-one days after the injection to see if it was working. Those tests were not performed. Dr. King did not have any further contact with Hindes.

Hindes's symptoms grew worse, and after he was transferred to another prison in late November 2013, his testosterone level was measured at well below the normal range. He felt normal again only after he was returned to the more frequent injection schedule as of December

3

18, 2013.

    C.    Report's Findings

Magistrate Judge Wilkerson concludes in the Report that Hindes has not presented any evidence from which a reasonable jury could find Duncan or King acted unreasonably or made any medical decisions outside the range of acceptable medical judgment that could lead to an inference of deliberate indifference. Instead, he concluded, the most Hindes could prove is that he disagreed with the defendants about the proper course of treatment for his condition, the failure to conduct more blood tests and the failure to refer him to a specialist. Specifically as to King, Magistrate Judge Wilkerson noted that King saw Hindes on one occasion, at which time he responded to Hindes's concerns and provided reasonable medical treatment. Magistrate Judge Wilkerson recommends granting summary judgment for the defendants.

**II.    Objections and Response to Objections**

In his objection, Hindes argues that there are several genuine issues of material fact that preclude summary judgment.

    A.    Duncan

The Court has reviewed the question of Duncan's conduct *de novo* and finds that her decision to lower the frequency of Hindes's injections in August 2013 could not be found to have been deliberately indifferent. She was faced with an objective lab test showing Hindes's testosterone level was above the range that the laboratory conducting the test indicated was normal. No reasonable jury could find her response was deliberately indifferent to Hindes's medical needs in light of the risks posed by excessively high testosterone levels.

Her decision to maintain the every-three-week injection schedule, though, is a different

story. The September 11, 2013, normal test result on which Duncan relied to maintain that regimen occurred sixteen days after his last injection on August 26, 2013, just over two weeks. Thus, it is likely it did not truly reflect whether an every-three-week injection schedule was adequate. The Court thinks a reasonable jury could find Duncan was deliberately indifferent when, after hearing Hindes's subjective complaints, she relied on a test result that shed little, if any, light on how a three-week injection interval would affect him. Summary judgment is not appropriate for Duncan.

B. King

The Court has reviewed the question of King's conduct *de novo* and finds that no reasonable jury could find him deliberately indifferent. He saw Hindes on a single occasion, ensured Hindes received an injection that day, and ordered a follow-up testosterone blood test to be conduct in each of the following three weeks. These orders are reflected in Hindes's medical records. He further indicated to Hindes that if the tests showed an unacceptably low testosterone level, he would change the injection regimen. It is hard to imagine what more King could have done at that time to better care for Hindes's testosterone problem. Furthermore, there is no indication Hindes was responsible for the follow-up tests not being performed as he ordered. As for King's alleged unprofessional conduct toward Hindes in connection with a testicular exam, the conduct, while insensitive, does not negate Hindes medically appropriate response to Hindes's condition. For these reasons, the Court agrees with Magistrate Judge Wilkerson that no reasonable jury could find King was deliberately indifferent to Hindes's medical needs. Summary judgment will be granted for King.

C. <u>Miscellaneous Objection</u>

Hindes complains that Magistrate Judge Wilkerson did not consider in his report the totality of care provided. While it is true that the totality of care over time can be important to the deliberate indifference inquiry, *see Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999), the Court is mindful of the requirement that, to be liable, a defendant must be personally responsible for wrongdoing, *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009). The Court has already determined Duncan is not entitled to summary judgment, and it will be up to a jury to decide whether her care, in its totality, amounted to deliberate indifference. As for King, he saw Hindes on one occasion, and the shortcomings of other medical personnel with which he had no personal involvement cannot be attributed to him for the purposes of finding deliberate indifference.

For the foregoing reasons, the Court hereby:

- **ADOPTS** the Report **in part** and **REJECTS** the Report **in part** (Doc. 108);

- **OVERRULES** in part Hindes's objections **in part** (Doc. 109);

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 101). Summary judgment is **GRANTED** for King and **DENIED** for Duncan; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court further **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Wilkerson's chambers on or before February 23, 2018.

**IT IS SO ORDERED.**
**DATED:   February 1, 2018**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**